IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARLTON BENNETT,<br><br>   *Petitioner,*<br><br>v.<br><br>MICHAEL CLARK, *et al.*,<br><br>   *Respondents.* | CIVIL ACTION<br>NO. 16-3687 |

PAPPERT, J.                        December 29, 2017

**MEMORANDUM**

On July 5, 2016, Carlton Bennett filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On February 1, 2017, Magistrate Judge Rice issued a Report and Recommendation ("R&R") recommending that the petition be denied. (ECF No. 13.) Bennett filed objections to the R&R on April 20, 2017.[1] (ECF No. 19.) After thoroughly reviewing the record, Magistrate Judge Rice's R&R and Bennett's objections, the Court overrules those objections and adopts the R&R.

I

Bennett was convicted of second-degree murder, robbery, criminal conspiracy and possessing an instrument of crime in the Court of Common Pleas of Philadelphia County on January 27, 1993. *Commonwealth v. Carlton Bennett*, No. 51-933202-1991 (Pa. Ct. Com. Pl. Phila. Cnty. Jan. 21, 1993). The court sentenced Bennett to a mandatory life sentence for the second-degree murder conviction and concurrent terms

---

[1]   Bennett was required to file his objections on or before April 17, 2017. (ECF No. 16.) The Court received Bennett's objections on April 20, 2017. (ECF No. 19.) Bennett was entitled to an additional three days to file his objections because the R&R was served on him by mail. *See Neiman v. Astrue*, No. 09-4472, 2011 WL 816779, at *2 (E.D. Pa. Mar. 8, 2011).

1

of incarceration for the other offenses. *Id.* Bennett filed a direct appeal and the Superior Court of Pennsylvania affirmed his conviction on February 17, 1994. *Commonwealth v. Bennett*, 643 A.2d 701 (Pa. Super. Feb. 17, 1994). Bennett did not seek review from the Pennsylvania Supreme Court.

Bennett filed a timely petition under Pennsylvania's Post Conviction Relief Act ("PCRA") on March 17, 1995. *Commonwealth v. Carlton Bennett*, No. 253 EDA 2014, 2016 WL 545908, at *1 (Pa. Super. Feb. 9, 2016). The PCRA court dismissed the petition on April 10, 1997. *Id.* Bennett appealed and the Superior Court affirmed. *Commonwealth v. Carlton Bennett*, No. 1290 EDA 2000 (Pa. Super. Aug. 28, 2003). Again, Bennett did not seek review from the Pennsylvania Supreme Court.

On April 25, 2006, Bennett filed a new PCRA petition, alleging that there was newly discovered evidence of his innocence. *Commonwealth v. Carlton Bennett*, CP-51-0933202-1991, 468 EDA 2007 (C.C.P. Phil. Co. Nov. 22, 2013). On January 24, 2007, the PCRA court dismissed Bennett's petition as untimely. *Id.* at 10. Bennett appealed, and on May 1, 2008, the Superior Court remanded Bennett's petition so that he could add a claim based on a new affidavit. After holding a series of evidentiary hearings, the PCRA court again denied Bennett's PCRA petition as untimely on November 11, 2013 and the Superior Court affirmed that decision on February 9, 2016. *Id.* at 18.

On June 28, 2016, Bennett filed this *pro se* petition for a writ of habeas corpus, raising three claims. (ECF No. 1.) First, Bennett avers that his life sentence without the possibility of parole violates the Eighth Amendment in light of the Supreme Court's holding in *Miller v. Alabama*, 567 U.S. 460 (2012). Second, Bennett contends he is actually innocent and, finally, that the fundamental miscarriage of justice exception

applies. (ECF No. 1 at 5, 7.) On February 1, 2017, Judge Rice issued his R&R, recommending that Bennett's claims for relief be denied because his habeas petition was untimely. (R&R at 1, ECF No. 13.) On April 20, 2017, Bennett filed two objections to the R&R: (1) that he is entitled to an alternative start date of the one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(C) based on *Miller*; and (2) that the fundamental miscarriage of justice exception applies based on new evidence demonstrating his actual innocence.

II

A

The facts of this case are set forth in detail in Judge Rice's R&R and need not be repeated here. "[F]or the portion of the R&R to which no objection [is] made, the Court reviews the R&R for clear error."[2] *Harris v. Mahally*, No. 14-2879, 2016 WL 4440337, at *4 (E.D. Pa. Aug. 22, 2016). The Court reviews *de novo* the specific portions of the R&R to which a party objects. *See* 28 U.S.C. § 636(b)(1); *see also Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

---

[2] When reviewing those portions of the report to which no objection is made, the Court should, as a matter of good practice, "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72(b) advisory committee notes; *see also Oldrati v. Apfel*, 33 F. Supp. 2d 397, 399 (E.D. Pa. 1998) ("In the absence of a timely objection, therefore, this Court will review [a] Magistrate Judge['s] . . . Report and Recommendation for 'clear error.'"). For the portions of the R&R to which Bennett has not objected, no clear error appears on the face of the record and the Court accordingly accepts Judge Rice's recommendation.

B

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on applications for writs of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period begins to run from the latest of the following:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could be discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).

Federal courts have "equitable authority…to overcome the expiration of the statute of limitations governing a first habeas petition" by "invok[ing] the miscarriage of justice exception." *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013). Under this exception, "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims…on the merits notwithstanding the existence of a procedural bar to relief." *Id.* at 392. "The fundamental miscarriage of justice exception is narrow," applying "'to a severely confined category: cases in which new evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Coleman v. Greene*, 845 F.3d 73, 76 (3d Cir. 2017) (quoting *McQuiggin*, 569 U.S. at 395 (quotation omitted)). "[T]he exception is only available when a petition[er] presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of

4

the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). "[W]ithout any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Id.* "Proving actual innocence based on new evidence requires the petitioner to demonstrate (1) new evidence (2) that is reliable and (3) so probative of innocence that no reasonable juror would have convicted the petitioner." *Sistrunk v. Rozum*, 674 F.3d 181, 191 (3d Cir. 2012) (citing *Schlup*, 513 U.S. at 324).

Bennett's conviction became final on March 21, 1994. He filed his first PCRA petition on March 17, 1995, 361 days after his final judgment date, tolling the one-year limitations period. (ECF No. 1 at 2.) The PCRA proceeding concluded on September 29, 2003, giving Bennett until October 3, 2003 to file his federal habeas petition. Bennett did not file his federal habeas petition until June 28, 2016. (R&R at 7, ECF No. 13.) Bennett's habeas petition is untimely unless he qualifies for an alternative start date of the one-year limitations under § 2244(d)(1)(C), or the fundamental miscarriage of justice exception applies.

### III

#### A

In his first objection, Bennett contends that *Miller* warrants a new start date of the one-year statute of limitations under 28 U.S.C. § 2244(d)(1)(C). In *Miller*, the United States Supreme Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition

5

on 'cruel and unusual punishments.'" 567 U.S. at 465; *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 732 (2016) ("*Miller* announced a substantive rule of constitutional law that is retroactive").

*Miller* does not apply to Bennett and does not trigger an alternative start date for AEDPA's statute of limitations. Bennett was twenty years old at the time he committed the crimes for which he was convicted. (ECF No. 1 at 7.) *Miller*'s holding is limited to juvenile offenders under eighteen at the time of their crime. *See, e.g.*, *Sharp v. Walsh*, No. 13–3634, 2014 WL 265768, at *3 (E.D. Pa. Jan. 21, 2014) (holding that *Miller* did not apply to habeas petitioner who was twenty years old at time he committed crime); *Weaver v. Kerestes*, No. 13-3947, 2013 WL 6506318, at *3 (E.D. Pa. Dec. 12, 2013) (same).

Bennett argues that *Miller* should be extended to persons defined as juveniles under state law. Pennsylvania law defines juvenile as an individual twenty years old or younger. *See* Pa. Stat. and Cons. Stat. Ann. § 1991 (defining adult as "[a]n individual 21 years of age or over."). The Pennsylvania statute is immaterial. Under § 2254(a), federal law governs and *Miller*'s holding was explicitly limited to individuals under the age of eighteen at the time of their crime. *See Adkins v. Wetzel*, No. 13-3652, 2014 WL 4088482, at *5 (E.D. Pa. Aug. 18, 2014) ("Presumably aware that the definition of 'juvenile' or 'child' may vary from state to state, the Supreme Court drew a bright line at eighteen years of age….").

B

In his second objection, Bennett claims that the fundamental miscarriage of justice exception applies to his petition based on purported new evidence demonstrating

6

his actual innocence. Bennett rests his argument on new evidence in the form of testimony from Wayne Richman and his cousin Dwayne Bennett that allegedly demonstrates his innocence. (ECF No. 19, at 7.)

Richman was the victim's roommate at the time of the murder. (R&R at 11, ECF No. 13.) Bennett argues that, if given the opportunity, Richman would testify that he witnessed the murder, "that there was one person standing two feet from [the victim, and] two people who were about twenty feet away from [the victim.] [H]e heard [those two people] say 'don't' before [the victim] was shot and killed." (*Id.*) At a prior PCRA hearing, Richman testified that he witnessed Dwayne shoot the victim while Bennett stood ten-to-twenty feet away. (*Id.*) The PCRA court concluded that Richman was an incredible witness because he "provides an implausible and inconsistent account of the events of the night of the murder" and had been "subject to suggestion, influence, and coercion prior to providing testimony." (*Id.* at 12.)

The PCRA court's factual finding—that Richman provides an implausible and inconsistent account—binds this Court, and Bennett "has not shown clear and convincing evidence to the contrary." *Sistrunk*, 674 F.3d at 190 (noting that PCRA court factual finding that affidavit was unreliable is binding); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("Section 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."). Bennett has not offered any evidence to contradict the PCRA court's credibility findings as to Richman. Moreover, his testimony is insufficient to show that no reasonable juror would have convicted Bennett; it fails to satisfy the exacting standard for the fundamental miscarriage of justice exception to apply because

7

this evidence of Bennett's innocence is not so strong as to undermine confidence in the outcome of the trial.  *See Coleman*, 845 F.3d at 76.  Bennett has failed to demonstrate that, in light of Richman's testimony, "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Coleman*, 845 F.3d at 77 (quoting *McQuiggin*, 569 U.S. at 386); *see also Houck v. Stickman*, 625 F.3d 88, 95 (3d Cir. 2010).

Bennett also claims that he has new evidence in the form of "recantation testimony" from Dwayne, Bennett's first cousin who pleaded guilty to first-degree murder for killing the victim in this case.  (R&R at 1, 13, ECF No. 13.)  After his arrest, Dwayne gave statements implicating Bennett in the robbery.  Sixteen years later at the PCRA hearing, Dwayne recanted and testified that Bennett was not involved in the robbery that preceeded the murder, but was merely present when he shot the victim. (*Id.*)

Dwayne's purported testimony also fails to demonstrate Bennett's actual innocence because it is unreliable and not so probative of Bennett's innocence that no reasonable juror would have convicted him.  First, this recantation testimony is unreliable because it comes nearly sixteen years after Bennett's conviction, from a co-defendant and relative of Bennett that admitted to having lied before in this case.  *See Taylor v. Illinois*, 484 U.S. 400, 414 (1988); *see also Sistrunk*, 674 F.3d at 191 (letter found to be unreliable because it came "nearly a decade too tardy from another prisoner, who is related to [the appellant] and admits to having lied once before.").  The testimony is also unreliable because "[r]ecantation testimony is properly viewed with great suspicion [since it] is very often unreliable [and] most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of

the conviction." *Dobbert v. Wainwright*, 468 U.S. 1231, 1233–34 (1984); *see also Landano v. Rafferty*, 856 F.2d 569, 572 (3d Cir. 1988) ("Courts have historically viewed recantation testimony with great suspicion."). Moreover, Bennett's new evidence fails to satisfy the fundamental miscarriage of justice exception. Bennett has not persuaded this Court that, in light of Dwayne's testimony, "it is more likely than not that no reasonable juror would have convicted" him. *Coleman*, 845 F.3d at 77 (quoting *McQuiggin*, 569 U.S. at 386). "*Schlup* sets a supremely high bar," and the recantation of Dwayne's testimony cannot clear it. *Sistrunk*, 674 F.3d at 192. For this reason, the narrow fundamental miscarriage of justice exception is inapplicable. *See Coleman*, 845 F.3d at 76.

IV

For the reasons above, the Court adopts the R&R in its entirety, overrules Bennett's objections and denies and dismisses Bennett's petition. An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.